PAULINE GAUL, as Administratrix, etc., of ALBERT GAUL, Deceased, Respondent, v. ROCHESTER PAPER COMPANY, Appellant.

*Master and servant — negligence — personal injury — insufficiency of a workshop roof to sustain ice falling from a higher building.*

In an action brought to recover from a manufacturing corporation the damages resulting from the death of an employee, caused by ice falling upon and crushing in the roof of the building in which he worked, from the roof of a higher building of the defendant on which deposits of ice were formed by the spray of an adjacent waterfall, the evidence showed that ice so formed had fallen before; that about eight months before the accident in suit, such a fall of ice had crushed in the roof of the lower building and injured the deceased, and that the defendant thereupon put on a new roof, which the evidence tended to show was inadequate to sustain the strain which the defendant knew it was liable to be subjected to by the falling of ice from the higher building.

*Held,* that there could be no question but that the defendant was negligent in failing to furnish the deceased with a safe place to do the work required of him.

It was claimed by the defendant that the danger was so obvious that the deceased was guilty of negligence in consenting to work in the building under the circumstances. The deceased had been engaged in operating machinery in the building for eighteen months before the crushing in of the roof which caused his death, and had the opportunity of looking at it to see the manner of its construction, but he was not a carpenter and was not shown to have had any knowledge of the construction or strength of the roof, except what he would derive from looking at it.

*Held,* that the deceased had a right to assume that the defendant, with its superior knowledge and information, would build a roof of sufficient strength to protect its employees and property from falling ice;

That no especially active duty was imposed upon the deceased to inspect the mechanism of the building with a view of determining the question of its safety;

And, hence, that it was for the jury to say whether his remaining in the building, under the circumstances, was such negligence as to prevent a recovery.

APPEAL by the defendant, the Rochester Paper Company, from a judgment in favor of the plaintiff, entered in the office of the clerk of Monroe county on the 10th day of February, 1893, upon a verdict rendered at the Monroe Circuit, and also from an order entered in said clerk's office on the 10th day of February, 1893, denying the defendant's motion for a new trial made upon the minutes.

*George F. Yeoman,* for the appellant.

*P. Chamberlain, Jr.,* for the respondent.

LEWIS, J. :

This action was brought by the plaintiff as administratrix of the estate of her deceased husband, Albert Gaul, to recover damages sustained by his next of kin by his death caused by the alleged negligence of the defendant.

The defendant is a domestic corporation engaged in the manufacture of paper. Its mills are situate on the bank of the Genesee river below the city of Rochester, at what are known as the Lower Falls. A part of its plant consists of a three-story building with a gable roof. One end of the building stands in close proximity to the brink of the falls. Between this building and another tall building belonging to another company was a space twenty-four feet wide. In this space and between the sides of these buildings there was a one-story frame building, about twenty-four feet long, fourteen feet wide and fourteen feet high, occupied by the defendant with a number of heavy machines used for grinding wood into pulp.

On the morning of the 9th of March, 1892, the deceased was at work in this small building operating these machines, and while thus employed a large quantity of ice fell from the roof of defendant's three-story building upon the roof of the small building, crushed it in upon the deceased and caused his death. One side of the roof of the large building sloped towards the small building. The distance from the eaves of the large building to the roof of the low one was from eighteen to twenty feet.

Large quantities of spray arise from the waters as they fall over the precipice, which drifts over upon the roofs of the buildings, and

in cold weather freezes and forms coatings of ice thereon. When a thaw comes the ice is loosened from the roofs and slides off, and so much of it as is over the roof of the low building falls thereon; this had occurred several times previous to the time Gaul was killed. Gaul commenced working for the defendant in the small building about eighteen months prior to the time of his death.

About eight months before his death, ice fell from the taller building onto the roof of the small one and crushed it in, and Gaul sustained some slight injuries thereby. The defendant then covered the small building with a gable roof, and that was the roof which was upon the building at the time of the accident; the former roof was flat. Gaul was at home recovering from his injuries at the time the gable roof was constructed. A particular description of the materials used and the manner of constructing the gable roof was shown upon the trial. While it was constructed of strong materials quite sufficient to sustain any ordinary weight, the evidence tended to show that it was not properly sustained from below and was entirely inadequate to sustain the strain that it was well known by the defendant it was liable to be subjected to by the falling of ice from the roof of the larger building. The ice that fell from the high building at the time deceased was killed, was from four to six inches in thickness, and that which fell on the small building weighed from one to two tons. The defendant had occupied these premises for five years prior to the date in question. Its president testified that they had been troubled by the ice falling from the roof of the main building upon the lower building ever since they first occupied the premises.

There can be no question but that the defendant failed to furnish the deceased with a safe place to do the work it required of him. Counsel for the appellant does not claim to the contrary, but insists that the danger was so obvious that the deceased was guilty of negligence in consenting to work in the building under the circumstances, and this presents the serious question in the case.

The deceased was twenty-six years of age when he was killed. He had been living in this country but four years. He was operating the mills in this building, and had the opportunity by looking at it to see the manner of its construction, but he was not a carpenter and was not shown to have had any knowledge of the construction

or strength of the roof, except what he would derive from looking at it. He had a right to assume that the defendant, with its superior knowledge and information, would build a roof of sufficient strength to protect its employees and property from the falling ice.

He had a right to assume that so far as ordinary diligence could accomplish it, the master would furnish proper structures and appliances to insure the safety of its employees. No especially active duty was imposed upon him to inspect the mechanism of the building with a view of determining the question of its safety. (*Rigdon* v. *Allegany Lumber Co.*, 37 N. Y. St. Repr. 517.) John Henselman, an employee of the defendant, who had charge of the pulp grinding and was deceased's foreman, testified that Gaul conversed with him a short time before the accident about the danger of the ice falling upon the building, and expressed his opinion that it would not stand it if the ice came down upon it, and said that he was afraid to stay in it.

Another witness testified that Gaul expressed fear about the strength of the roof, but said he thought he was joking when he spoke of it. Such evidence is not of the most satisfactory character. Witnesses are quite apt to misunderstand such conversations and give a wrong construction to them.

We think it was for the jury to determine whether the deceased fully understood and comprehended the strength of the new roof, and whether he had sufficient information and intelligence to realize the danger of the situation. While he may have had some fears regarding it, it was for the jury to say whether his remaining in the building under the circumstances was such negligence as to prevent a recovery.

The charge of the court to the jury was very full, and the law bearing upon the questions was clearly presented to them. No exceptions were taken to the charge.

We find nothing in the defendant's exceptions to the refusal of the court to charge his requests, in view of what had been said in the main charge calling for a new trial.

The judgment and order appealed from should be affirmed.

HAIGHT and BRADLEY, JJ., concurred.

Judgment and order appealed from affirmed.